UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA <u>ex</u> <u>rel.</u>, and STATE     Docket No.: 12-cv-05103-LGS
OF NEW YORK <u>ex</u> <u>rel.</u>, MICHAEL I. LEVINE, M.D.,

                              Plaintiff-Relator,

        v.

ROBERT MATALON, MD, JOSEPH SHAMS, MD,
DANIEL MATALON, MD, ALBERT MATALON,
M.D, VASCULAR ACCESS CENTERS (and each of
its subsidiary and/or related Corporations), JAMES
McGUCKIN, MD (and any and all clinics owned, run,
managed or operated by him), PHILADELPHIA
VASCULAR INSTITUTE,

                              Defendants.

-------------------------------------------------------------------X


## <u>DEFENDANTS ROBERT MATALON, M.D., DANIEL MATALON, M.D., AND ALBERT MATALON, M.D.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>


RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556-0926
Telephone:     (516) 357-3000
Facsimile:      (516) 357-3333

*Counsel for Defendants Robert
Matalon, M.D., Daniel Matalon,
M.D., and Albert Matalon, M.D.*

Of Counsel:
     Geoffrey Kaiser, Esq.
     Brian L. Bank, Esq.
     Michelle A. Bholan, Esq.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 3

PROCEDURAL POSTURE ...................................................................................................... 6

STANDARD OF LAW .............................................................................................................. 7

      A.   General Legal Principles ................................................................................................ 7

      B.   Fed. R. Civ. P. 9(b) ("Rule 9(b)") Applies to Claims Under the FCA ........................... 8

ARGUMENT ............................................................................................................................ 10

I.     THE AMENDED COMPLAINT FAILS TO STATE A CAUSE OF ACTION
      UNDER THE FCA AS AGAINST THE MATALON DEFENDANTS .......................... 10

      A.   The Amended Complaint Fails to Plead a Fraudulent Scheme with the
           Requisite Particularity ............................................................................................... 11

           1.   The Shams Claims ........................................................................................... 11

           2.   The Capitated Claims ...................................................................................... 15

      B.   The Amended Complaint Fails to Allege Facts Sufficient to Establish the
           Falsity of the Alleged Claims ................................................................................... 17

           1.   Factual Falsity ................................................................................................. 18

           2.   Legal Falsity .................................................................................................... 19

      C.   The Amended Complaint Fails to Allege Facts Sufficient to Infer Scienter ................ 21

           1.   The Shams Claims ........................................................................................... 21

           2.   The Capitated Claims ...................................................................................... 22

      D.   The Amended Complaint Fails to Sufficiently Plead the Submission of a False
           Claim by the Matalon Defendants ........................................................................... 23

CONCLUSION ......................................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

United States ex. rel. Aryai v. Skanska,
No. 09-cv-5456(LGS), 2019 WL 1258938 (S.D.N.Y. Mar. 19, 2019).............................15, 25

Ashcroft v. Iqbal,
556 U.S. 662 (2009).................................................................................................................7, 8

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007).................................................................................................................7, 8

United States ex rel. Blundell v. Dialysis Clinic, Inc.,
No. 09-cv-00710(NAM)(DEP), 2011 WL 167246 (N.D.N.Y. Jan. 19, 2011) ........................20

Claudio v. Sawyer,
409 Fed. Appx. 464 (2d Cir. 2011)............................................................................................7

United States ex. rel. Grabcheski v. Am. Int'l Group, Inc.,
No. 10-cv-03902(GBD), 2016 WL 9083376 (S.D.N.Y. Mar. 31, 2016),
aff'd, 687 Fed. Appx. 84 (2d Cir. 2017) ...................................................................................8

Jaghory v. New York State Dep't of Edu.,
131 F.3d 326 (2d Cir. 1997)......................................................................................................7

State of New York ex. rel Khurana v. Spherion Corp.,
No. 15-cv-6605(JFK), 2017 WL 1437204 (S.D.N.Y. Apr. 17, 2017)........................17, 18, 21

United States ex rel. Ladas v. Exelis, Inc.,
824 F.3d 16 (2d Cir. 2016).........................................................................................................8

O'Brien v. Nat'l Prop. Analysts Partners,
936 F.2d 674 (2d Cir. 1991).................................................................................................8, 21

United States ex. rel. Pelullo v. American Int'l Group, Inc.,
757 Fed. Appx. 15 (2d Cir. 2019) .............................................................................................7

United States ex rel. Pervez v. Beth Israel Medical Center,
736 F. Supp. 2d 804 (S.D.N.Y. 2010)....................................................7, 9, 10, 19, 20, 21, 22

United States ex rel. Ramos v. Icahn Sch. of Med.,
No. 12-cv-5089(GBD), 2015 WL 5472933 (S.D.N.Y. Sept. 16, 2015) ..................................19

United States ex rel. Tessler v. City of New York,
712 Fed. Appx. 27 (2d Cir. 2017)...............................................................................13, 21, 23

United States ex rel.Chorches v. Am. Med. Response, Inc.,
    865 F.3d 71 (2d Cir. 2017)............................................................................8, 9, 10, 11, 23, 24

Wood ex rel. United States v. Applied Research Assocs., Inc.,
    328 Fed. Appx. 744 (2d Cir. 2009), cert. denied, 559 U.S. 929 (2010) ......................8, 13, 21

Wexner v. First Manhattan Co.,
    902 F.2d 169 (2d Cir. 1990)...........................................................................................8

**Statutes and Other Authorities**

31 U.S.C. § 3729.............................................................................................................7, 10, 22

31 U.S.C. § 3730.....................................................................................................................1

42 U.S.C. § 1395nn.................................................................................................................3

N.Y. Fin. Law § 189 ..........................................................................................................7, 10

42 C.F.R. § 414.314...............................................................................................................19

Fed. R. Civ. P. 9................................................................1, 2, 8, 9, 10, 13, 15, 16, 19, 21, 23, 25

Fed. R. Civ. P. 12 ...............................................................................................................1, 7

https://www.cms.gov/apps/physician-fee-schedule/search/search-
    results.aspx?Y=0&T=0&HT=1&CT=3&H1=90960&H2=90961&M=5 .............................19

## PRELIMINARY STATEMENT

Defendants Robert Matalon, M.D. ("Dr. Robert"), Daniel Matalon, M.D. ("Dr. Daniel"), and Albert Matalon, M.D. ("Dr. Albert") (collectively, the "Matalon Defendants") respectfully submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(b)(6) seeking dismissal of Relator Michael I. Levine, M.D.'s ( "Relator") Amended Complaint (the "Amended Complaint"), dated August 5, 2019, in its entirety, with prejudice.[1]

In this this _qui_ _tam_ action, Relator, a physician and former employee of Dr. Robert, asserts in his Amended Complaint that the Matalon Defendants – three individual nephrologists – are liable under the federal and New York False Claims Acts ("FCA") as a result of treatment allegedly rendered and claims allegedly submitted by Joseph Shams, M.D. ("Dr. Shams"), a physician who rendered, _inter_ _alia_, vascular access evaluation and corrective treatment.  In so doing, however, Relator proffers nothing more than naked, speculative, and conclusory allegations as against the Matalon Defendants and fails to adequately allege any of the requisite showings required under Rule 9(b) to sustain this FCA action.

Specifically, Relator baldly alleges that the Matalon Defendants had a causal role in Dr. Shams' alleged FCA violations and submitted their own allegedly false claims for capitated payments.  In doing so, however, Relator has failed to plead any facts, let alone sufficiently particularized facts, regarding the Matalon Defendants' unlawful conduct in connection with the alleged fraudulent scheme that resulted in either set of claims.  Similarly, the Amended Complaint is devoid of facts sufficient to establish that the Matalon Defendants submitted or caused to be submitted any claims that were factually or legal false.  Indeed, Relator did not allege facts from which it could be inferred that the claims were for services that had not been

---

[1] The Matalon Defendants reserve the right to move this Court for reasonable attorneys' fees and expenses pursuant to 31 U.S.C. § 3730(d)(4) should they prevail in this action.

performed and, thereby, failed to sufficiently plead a factually false claim under Rule 9(b). Moreover, Relator did not identify any certification made by the Matalon Defendants – express or implied – that would render the claims identified by Relator as legally false.

Furthermore, although Rule 9(b) permits a pleading to establish scienter by inference, the allegations in the Amended Complaint amount to nothing more than conjecture and innuendo, and do not include sufficiently particularized facts from which the Court can make any such inference with respect to the Matalon Defendants, whether it be actual knowledge, deliberate indifference, or reckless disregard.

Finally, Relator fails to sufficiently plead the submission of a false claim by the Matalon Defendants.  Specifically, the Amended Complaint is devoid of plausible allegations that lead to a strong inference that the Matalon Defendants submitted specific claims to the government. Rather, as explained above, Relator has completely and utterly failed to allege a fraudulent scheme that would support such an inference.  Under controlling precedent in this Circuit, where, as here, neither the alleged fraudulent scheme nor the actual submission of specific claims is pled with the particularity demanded by Rule 9(b), there is simply no basis for a court to conclude that specific false claims were submitted to the government – which is fatal to Relator's FCA claims as against the Matalon Defendants.

Notably, the deficiencies discussed above should come as no surprise to Relator.  Indeed, during a pre-motion conference, this Court questioned Relator about whether the Amended Complaint sufficiently stated a claim against the Matalon Defendants, suggested that the allegations against them appeared to be based on innuendo, and offered Relator the opportunity to re-plead.  In response, Relator, through counsel, unequivocally advised this Court that he had no additional facts to allege against the Matalon Defendants.  In light of the deficiencies

discussed herein and Relator's concession that his claims against the Matalon Defendants will necessarily survive or fail based upon the allegations in the Amended Complaint, this Court should dismiss, with prejudice, the Amended Complaint as against the Matalon Defendants.

## STATEMENT OF FACTS

The following statement of facts is based upon the allegations set forth in Relator's Amended Complaint.  The Matalon Defendants do not concede in any respect the truth or accuracy of these allegations, but recognize that, solely for purposes of this motion, the allegations are entitled to favorable assumptions by law.

The vast majority of allegations in the Amended Complaint are directed at Dr. Shams. Relator alleges that Dr. Shams billed federal healthcare programs for medically unnecessary vascular access-related services.  See Declaration of Brian L. Bank, as declared on October 24, 2019 ("Bank Decl."), Ex. A at ¶¶ 71-73, 84-111.  Specifically, Relator contends that Dr. Shams engaged in an illegal practice of "self-referrals"[2] by scheduling End Stage Renal Disease ("ESRD") patients on whom he performed fistulagrams and, if necessary, medically appropriate vascular access corrective procedures for additional follow-up visits irrespective of the outcomes of subsequent dialysis and evaluations by the treating nephrologist and without further referral from the treating nephrologist.  See Bank Decl., Ex. A at ¶¶ 67, 72-73.  According to Relator, during these follow-up appointments, which fell outside of the scope of the role of the vascular access care physician under the government's reimbursement rules, Dr. Shams would perform medically unnecessary services.  See Bank Decl., Ex. A at ¶¶ 67, 73.

The allegations asserted against the Matalon Defendants are limited to naked accusations

---

[2] Relator's unorthodox use of the phrase "self-referrals" – as an apparent synonym for a physician scheduling follow-up medical visits – is  inconsistent with how courts and others have generally used that phrase, which typically describes a particular type of physician referral that is regulated under the Stark Self-Referral Law (42 U.S.C. § 1395nn).

crammed into a few pages toward the end of the Amended Complaint and amount to nothing more than speculation and innuendo.  Specifically, Relator alleges that the Matalon Defendants "caused" Dr. Shams' submission of allegedly false claims by referring patients to Dr. Shams with supposed knowledge that Dr. Shams engaged in this practice of so-called "self-referrals" and was submitting claims for medically unnecessary services to the Medicare and Medicaid programs.  See Bank Decl., Ex. A at ¶ 113.

Although Relator does not allege any factual basis for this supposed knowledge, he asserts that it was "virtually inevitable" that the Matalon Defendants would learn that their patients were receiving unnecessary procedures from Dr. Shams because patients "invariably" provide feedback to their treating physicians regarding the examinations and procedures performed by specialists.  See Bank Decl., Ex. A at ¶ 115.  Relator further contends that there is "usually" physical evidence of the procedure that is readily observable to the treating nephrologist.  See Bank Decl., Ex. A at ¶ 115.  In addition, Relator alleges that Dr. Shams "would have" sent notes documenting any procedures performed on the Matalon Defendants' patients which "would have been" added to the patients' charts.  See Bank Decl., Ex. A at ¶ 116. Relator further posits that the patient charts "would routinely and regularly have been" reviewed by the Matalon Defendants and that such review "would have" informed the Matalon Defendants of Dr. Shams' practice of engaging in "self-referrals."  See Bank Decl., Ex. A at ¶ 116.  Finally, Relator also alleges that patients of the Matalon Defendants "would routinely and regularly have discussed" the fact that Dr. Shams was scheduling them for additional treatment.  See Bank Decl., Ex. A at ¶ 117.

Relator further contends that he was "informed by patients he cared for while employed by [Dr. Robert] that the patients were to return for follow-up appointments for access evaluations

4

even though neither [Relator], nor any of the other healthcare professionals in the dialysis units, initiated the referrals." See Bank Decl., Ex. A at ¶ 85.  According to Relator, he identified two patients that he purportedly treated while employed by Dr. Robert (RG and JO) and learned that each of them were scheduled for allegedly unnecessary follow-up appointments with Dr. Shams. See Bank Decl., Ex. A at ¶¶ 86, 92, 118.  In both cases, Dr. Shams recommended that the patients not return for the scheduled follow-up appointments.  See Bank Decl., Ex. A at ¶¶ 86, 92.  Relator also contends that CB, another patient that Relator treated while employed by Dr. Robert, told Relator that CB was undergoing certain procedures about every three months and acknowledged that it might be an example of a "New York hustle." See Bank Decl., Ex. A at ¶ 119.

Relator alleges that by ordering and/or authorizing his staff to schedule access-related appointments with Dr. Shams, which would also require that the staff arrange for federally funded transportation for indigent patients, Dr. Robert, with the alleged full knowledge of Drs. Daniel and Albert, used said transportation to steer patients to Dr. Shams.  See Bank Decl., Ex. A at ¶ 120.  Relator further contends that said transportation arrangements "would have" also placed the Matalon Defendants on notice of the excessive frequency with which Dr. Shams treated their patients.  See Bank Decl., Ex. A at ¶ 120.

Relator alleges that he observed Dr. Robert boasting that all decisions relating to referrals to vascular access centers must meet a "what's in it for me?" test.  See Bank Decl., Ex. A at ¶ 121.  He also claims that Dr. Robert stated something to the effect of "a number of the[] [vascular access facilities] are shady" which, according to Relator, somehow put Dr. Robert "on notice of the rampant nature of the self-referral practices" of Dr. Shams.  See Bank Decl., Ex. A at ¶ 122.

5

Finally, Relator alleges the federal government reimburses nephrologists "a monthly capitated fee which is proportional to the number of patient visits up to a total of four per month" in exchange for the nephrologists' rendering of certain services to their patients, including the surveillance of their patients' vascular access sites.  See Bank Decl., Ex. A at ¶ 37.  Relator alleges, in conclusory fashion, that the Matalon Defendants "farmed out" the monitoring of their patients' vascular access sites to Dr. Shams, which purportedly rendered their own claims for capitated payments medically unnecessary and "false" under the FCA.  See Bank Decl., Ex. A at ¶¶ 124-125.

## PROCEDURAL POSTURE

Relator filed this action under seal on June 27, 2012 pursuant to the qui tam provisions of the FCA.  The complaint originally named twenty-five defendants (including vascular access centers, hospitals, dialysis clinics, and individual physicians) and alleged, inter alia, that the defendants conspired to violate and did violate the FCA as well as the New York and New Jersey state counterparts by knowingly presenting false or fraudulent claims for reimbursement of medically unnecessary services and procedures to the Medicaid and Medicare programs.  In October 2018, the Court lifted the seal and the United States intervened with respect to the claims asserted against one of the named defendants in the action (Vascular Access Centers, L.P.) and settled with that defendant (also resulting in the dismissal of certain other defendants in the action).  The Relator thereafter advised this Court of his intention to pursue claims against all remaining defendants with one exception, but has since voluntarily dismissed as against all but four defendants – the Matalon Defendants and Dr. Shams.

After the filing by the Matalon Defendants of a pre-motion letter on April 4, 2019, regarding their intention to move for dismissal of this action as against them, this Court granted the request of Relator's then-counsel, J. Stephen Simms, Esq., to withdraw from the case and

ordered Relator to secure new counsel.  After receiving several extensions of time to do so,

Relator's current counsel appeared in this action on July 16, 2019 and thereafter requested leave

to file an amended complaint.

On August 5, 2019, Relator served the Amended Complaint asserting two causes of

action against all remaining defendants under the federal and New York FCAs:  (i) knowingly

presenting a false or fraudulent claim under 31 U.S.C. § 3729(a)(1)[3] and N.Y. Fin. Law

§ 189(1)(a);[4] and (ii) knowingly making, using, or causing to be made or used, a false record or

statement under 31 U.S.C. § 3729(a)(2) and N.Y. Fin. Law § 189(1)(b).

## STANDARD OF LAW

### A.  General Legal Principles

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "the court

must accept all factual allegations in the complaint as true and draw inferences from those

allegations in the light most favorable to the plaintiff."  Jaghory v. New York State Dep't of

Edu., 131 F.3d 326, 329 (2d Cir. 1997).  That said, "only a complaint that states a plausible claim

for relief survives a motion to dismiss."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (citing Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)); see Claudio v. Sawyer, 409 Fed. Appx.

464, 466 (2d Cir. 2011) (adopting the pleading standards articulated in Twombly and Ashcroft).

---

[3] The Amended Complaint cites to the pre-2009 provisions of the FCA.  In 2009, the FCA was
amended and the provisions upon which Relator asserts his claims were amended and reassigned
to 31 U.S.C. § 3729(a)(1)(A) and 31 U.S.C. § 3729(a)(1)(B), respectively.  For the Court's
convenience, this memorandum of law shall use the FCA's current language and citation for
these provisions.  Importantly, to the extent that Relator asserts claims that pre-date the 2009
amendments, his causes of action as against the Matalon Defendants would nonetheless fail for
the same reasons that his post-2009 claims fail, as detailed herein.

[4] "The [New York] FCA mirrors the federal FCA, and New York courts look to federal law to
interpret the state statute."  United States ex. rel. Pelullo v. American Int'l Group, Inc., 757 Fed.
Appx. 15, 17 (2d Cir. 2019).  As such, Relator's claims under the New York FCA fail for the
same reasons that his claims under the federal FCA fail.  See, e.g., United States ex rel. Pervez v.
Beth Israel Medical Center, 736 F. Supp. 2d 804, 816 (S.D.N.Y. 2010).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  In short, the pleading must "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.

### B.  Fed. R. Civ. P. 9(b) ("Rule 9(b)") Applies to Claims Under the FCA

"In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ."  Fed R. Civ. P. 9(b).  "Rule 9(b) principles apply to complaints filed under the False Claims Act[.]"  United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 21 (2d Cir. 2016).  "[F]raud under the FCA has two components:  the defendant must submit or cause the submission of a claim for payment to the government, and the claim for payment must itself be false or fraudulent."  United States ex rel.Chorches v. Am. Med. Response, Inc., 865 F.3d 71, 83 (2d Cir. 2017).

In the context of the FCA, a claim must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Ladas, 824 F.3d at 25.  Importantly, even when pleading is permitted by the Court upon information and belief, the complaint must still "adduce specific facts supporting a strong inference of fraud."  Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990).  Further, although "Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations."  Wood ex rel. United States v. Applied Research Assocs., Inc., 328 Fed. Appx. 744, 747 (2d Cir. 2009), cert. denied, 559 U.S. 929 (2010) (quoting O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991) (internal citation omitted)).  Rather, plaintiffs are required "to plead the factual basis which gives rise to a strong inference of fraudulent intent."  Id.; see United States ex. rel. Grabcheski v. Am. Int'l

Group, Inc., No. 10-cv-03902(GBD), 2016 WL 9083376, at *3 (S.D.N.Y. Mar. 31, 2016), aff'd, 687 Fed. Appx. 84 (2d Cir. 2017); Pervez, 736 F. Supp. 2d at 810-11.

Recently, in Chorches, the Second Circuit clarified what is required to plead the submission of false claims with particularity under Rule 9(b) in the qui tam context. Specifically, the Second Circuit concluded that "Rule 9(b) does not require that every qui tam complaint provide details of actual bills or invoices submitted to the government, so long as the relator makes plausible allegations . . . that lead to a strong inference that specific claims were indeed submitted and that information about the details of the claims submitted are peculiarly within the opposing party's knowledge." Chorches, 865 F.3d at 93.

Notably, however, the Second Circuit's decision did not vary or alter the long-standing requirement that a Relator must allege an underlying fraudulent scheme with particularity in order to satisfy the demands of Rule 9(b). See Chorches, 865 F.3d at 83 (noting that "there [wa]s little dispute that insofar as [defendant's] scheme of falsifying [Patient Care Reports] is concerned – as distinct from its subsequent submission of any claim for payment – the [Third Amended Complaint] 'state[s] with particularity the circumstances constituting fraud'") (emphasis added). Indeed, the Second Circuit noted that its holding in Chorches was consistent with its own prior precedents and the approach taken by multiple circuits that have "allowed a complaint that does not allege the details of an actually submitted false claim to pass Rule 9(b) muster by 'alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" Chorches, 865 F.3d at 89 (emphasis added).

## **ARGUMENT**

**I.    THE AMENDED COMPLAINT FAILS TO STATE A CAUSE OF ACTION UNDER THE FCA AS AGAINST THE MATALON DEFENDANTS**

As set forth above, the Amended Complaint purports to allege claims against the Matalon Defendants pursuant to:  (i) 31 U.S.C. § 3729(a)(1)(A) and N.Y. Fin. Law § 189(1)(a), which impose liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval"; and (ii) 31 U.S.C. § 3729(a)(1)(B) and N.Y. Fin. Law § 189(1)(b), which impose liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."

In order to state a claim under 31 U.S.C. § 3729(a)(1)(A), a plaintiff must allege that: (i) there was a false or fraudulent claim; (ii) defendant knew it was false or fraudulent; (iii) defendant presented the claim, or caused it to be presented, to the United States; and (iv) it did so to seek payment from the federal treasury.  See Pervez, 736 F. Supp. 2d at 811.   To state a claim under 31 U.S.C. § 3729(a)(1)(B), a plaintiff must allege that:  (i) defendant made, or caused to be made, a false or fraudulent record or statement; (ii) defendant knew it to be false or fraudulent; and (iii) it was material to a claim.  See id.

Generally, "[f]raud under the FCA has two components:  the defendant must submit or cause the submission of a claim for payment to the government, and the claim for payment must itself be false or fraudulent."  Chorches, 865 F.3d at 83 (internal quotation marks and citation omitted).  In order to satisfy the requirements of Rule 9(b), a relator must set forth particularized factual allegations of a fraudulent scheme and, to the extent that a relator does not have personal knowledge that false claims were submitted to the government, plausible allegations creating a strong inference that specific false claims were in fact submitted to the government and information sufficient to permit further identification of those claims is peculiarly within the

opposing party's knowledge.  See Chorches, 865 F.3d at 83-86.

As explained above, Relator appears to identify two separate sets of claims upon which he seeks to impose FCA liability upon the Matalon Defendants:  (i) the Shams Claims; and (ii) the Capitated Claims.  With respect to the latter, it is unclear whether Relator contends that these Capitated Claims were false because the Matalon Defendants (i) did not actually monitor their patients' access sites, or (ii) performed access monitoring services that were duplicative of those services allegedly rendered by Dr. Shams.  For the reasons set forth below, however, that distinction does not matter because, either way, all of Relator's causes of action as asserted against the Matalon Defendants must be dismissed due to Relator's failure to:  (i) plead a fraudulent scheme with the requisite particularity; (ii) allege facts sufficient to establish the falsity of the alleged claims; (iii) allege facts sufficient to infer scienter; and (iv) plead the submission of a false claim under the standard articulated in Chorches.

### A.  The Amended Complaint Fails to Plead a Fraudulent Scheme with the Requisite Particularity

Relator baldly alleges that the Matalon Defendants had a causal role in Dr. Shams' alleged FCA violations and submitted their own allegedly false claims for capitated payments. In doing so, however, Relator has failed to plead any facts, let alone sufficiently particularized facts, regarding the Matalon Defendants' unlawful conduct in connection with the alleged fraudulent scheme that resulted in either set of claims.

#### 1.  The Shams Claims

Relator asserts in conclusory fashion that the "fraudulent practices engaged in by Dr. Shams" were "knowingly condoned by the Matalon [D]efendants."  See Bank Decl., Ex. A at ¶ 74.  Specifically, Relator contends, without any factual support, that the Matalon Defendants regularly referred their patients to Dr. Shams "knowing that he engaged in the practice of self-

referrals, and therefore knowing that he was generating unnecessary and unreasonable claims to the Medicare and Medicaid Programs." <u>See</u> Bank Decl., Ex. A at ¶ 113.  Relator then concludes that, by virtue of these conclusory, non-factual allegations, the Matalon Defendants "caused the false and fraudulent claims submitted by Dr. Shams." <u>See</u> Bank Decl., Ex. A at ¶ 115.  Simply put, Relator's allegations amount to nothing more than rank speculation and innuendo, and fail to plead a fraudulent scheme with the necessary particularity.

It should be noted that Relator does not – and cannot[5] – allege that the Matalon Defendants directly referred any patient to Dr. Shams for medically unnecessary services.  The Amended Complaint is bereft of any allegation that the Matalon Defendants' referral of patients to Dr. Shams was, in and of itself, somehow improper.  Moreover, by Relator's own allegations, any allegedly superfluous follow-up appointments with Dr. Shams for medically unnecessary services were <u>not</u> initiated by referrals from the Matalon Defendants.  <u>See</u> Bank Decl., Ex. A at ¶ 85 ("Multiple times [Relator] was informed by patients he cared for while employed by Dr. [Robert] that the patients were to return for follow-up appointments for access evaluations even though neither [Relator], <u>nor any of the other healthcare professionals in the dialysis units</u>, initiated the referrals") (emphasis added).

Instead, Relator contends that the Matalon Defendants should be charged with knowledge of Dr. Shams' practice of "self-referrals" and held accountable for Dr. Shams' allegedly unreasonable and unnecessary claims to the Medicare and Medicaid programs.  The Amended Complaint, however, lacks any factual allegation that, if proven true, would establish the Matalon Defendants' purported "knowledge" of Dr. Shams' alleged fraudulent practices, instead

---

[5] During the September 10, 2019 pre-motion conference before this Court, the Court offered Relator an opportunity to re-plead his claims against the Matalon Defendants and Relator, through counsel, advised the Court that he had no additional facts to allege as against the Matalon Defendants.

proffering only conjecture and speculation that falls far short of the particularized allegations of fact necessary to survive a motion to dismiss.  See, e.g., United States ex rel. Tessler v. City of New York, 712 Fed. Appx. 27, 29 (2d Cir. 2017) ("To comply with Rule 9(b), the complaint must be supported by more than "conclusory statements" or "hypotheses," and it must set for "particularized allegations of fact.").

Relator purports to rely on speculative assertions that the Matalon Defendants' "would have known" that patients were receiving medically unnecessary services from Dr. Shams based on a variety of occurrences that "would have" happened.  See Bank Decl., Ex. A at ¶¶ 115, 116 (i.e., Dr. Shams "would have" sent notes documenting their unnecessary procedures, these notes "would have been" added to patients' charts, and those charts "would routinely and regularly have been" reviewed by the Matalon Defendants).  It is plain that such tenuous allegations are insufficient to satisfy the requirements of Rule 9(b).  See Tessler, 712 Fed. Appx. at 29.  Rank speculation that a defendant "would have" known something or "would have" done something is a far cry from the type of specific factual allegation that is required under Rule 9(b).  See Wood, 328 Fed. Appx. at 750.

In addition, although Relator alleges that two patients he treated while employed by Dr. Robert were allegedly scheduled for unnecessary follow-up appointments with Dr. Shams, see Bank Decl., Ex. A at ¶¶ 86, 92, 118, noticeably absent from the Amended Complaint is any allegation connecting this knowledge to the Matalon Defendants.  Relator does not allege that he had any conversation with any patient wherein the patient advised Relator that he/she had discussed Dr. Shams' alleged practice of "self-referral" with any of the Matalon Defendants, or that Relator himself discussed Dr. Shams' alleged practice of "self-referral" with the Matalon

Defendants.[6]   Instead, Relator simply relays a conversation that he had with Dr. Shams that alerted him to Dr. Shams' purported misconduct.  See Bank Decl., Ex. A at ¶¶ 87-91.

Also, although Relator concedes that Dr. Shams' alleged "self-referrals" were not initiated by the Matalon Defendants, see Bank Decl., Ex. A at ¶ 85, he claims that the Matalon Defendants, by virtue of arranging the transportation for access related appointments, were placed "on notice" of "the excessive frequency with which their patients were returning unnecessarily to the access centers."  See Bank Decl., Ex. A at ¶ 120.  Importantly, however, Relator himself alleges that the Matalon Defendants' staff made transportation arrangements for their patients when scheduling appointments with Dr. Shams.  See id.  Given Relator's acknowledgement that the Matalon Defendants did not initiate any of the alleged "self-referral" follow-up appointments with Dr. Shams, it is axiomatic that the Matalon Defendants' staff would not have made transportation arrangements for such follow-up appointments and, accordingly, those transportation arrangements could not have revealed the frequency, excessive or otherwise, with which their patients were returning to Dr. Shams.  See Bank Decl., Ex. A at ¶¶ 85, 120.

Moreover, Relator's argument that the vague statements that he attributes to Dr. Robert – namely, that all decisions for referral to vascular access centers must meet a "what's in it for me?" test[7] and words suggesting that a number of vascular access facilities are shady, see Bank Decl., Ex. A at ¶ 122 – somehow reveals that Dr. Robert was on notice of Dr. Shams' alleged

---

[6] Similarly, Relator does not allege that he conveyed the details of his conversation with CB to the Matalon Defendants or that CB told Relator that he/she had also advised the Matalon Defendants of his/her alleged repeated procedures.  Remarkably, Relator does not even allege that:  (i) any of the Matalon Defendants ever treated CB; (ii) CB's alleged repeated procedures were not medically necessary and/or were performed without a referral by a treating nephrologist; or (iii) Dr. Shams performed any of CB's alleged repeated procedures.  See Bank Decl., Ex. A at ¶ 119.

[7] This allegation appears to be a vestige of the meritless kickback allegations that were included in Relator's original Complaint and which Relator has since abandoned in the Amended Complaint.

"self-referral" practice is not only unpersuasive, but also unsupported by any particularized factual allegations.

Finally, it bears emphasis that the allegations in the Amended Complaint implicating the Matalon Defendants are generally allegations about the Matalon Defendants as a group and, as such, are insufficient to survive dismissal under Rule 9(b).  See United States ex. rel. Aryai v. Skanska, No. 09-cv-5456(LGS), 2019 WL 1258938, at *8 (S.D.N.Y. Mar. 19, 2019) (noting that Rule 9(b) "is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'") (internal quotation marks and citation omitted).  Indeed, "a plaintiff alleging a claim sounding in fraud against multiple defendants under Rule 9(b) must plead with particularity by setting forth separately the acts complained of by each defendant."  Id.  In this case, however, with the exception of a few unsupported allegations lodged solely against Dr. Robert, see Bank Decl., Ex. A at ¶¶ 115, 120-122, the Amended Complaint impermissibly lumps together the Matalon Defendants and thereby fails to set forth with particularity the separate acts attributed to each of them.  In fact, there are virtually no allegations in the Amended Complaint detailing any individualized conduct by Drs. Albert and/or Daniel, let alone particularized factual allegations of unlawful conduct.  Relator's improper attempt to impermissibly conflate the "Drs. Matalon" thus mandates the dismissal of the Amended Complaint as against them.

Based on the foregoing, Relator has failed to plead a fraudulent scheme in connection with the Shams Claims with the requisite particularity required by Rule 9(b).

### 2.    The Capitated Claims

Relator also contends that the Matalon Defendants violated the FCA in connection with their submission of certain Capitated Claims.  Specifically, Relator contends – without pleading any specific factual support for the proposition – that the Matalon Defendants directly billed Medicare and Medicaid for monthly capitated payments for services that include, but are not

limited to, surveillance of the Matalon Defendants' patients' vascular access sites.  See Bank Decl., Ex. A at ¶ 124.  Relator offers a conclusory assertion that, with respect to those patients that were referred to Dr. Shams for vascular access treatment, the Matalon Defendants somehow "farmed out" the monitoring of patient vascular access sites to Dr. Shams, thereby rendering their own Capitated Claims medically unnecessary and "false" under the FCA.  See Bank Decl., Ex. A at ¶ 125.  Although it is unclear whether Relator contends that the Matalon Defendants' did <u>not</u> monitor their patients' access sites or performed <u>duplicative</u> vascular monitoring services as those rendered by Dr. Shams, Relator has, either way, failed to allege <u>any</u> fraudulent scheme by the Matalon Defendants with the requisite particularity.

Critically, the Amended Complaint fails to set forth any allegations whatsoever in support of Relator's naked assertion that the Matalon Defendants did not monitor their patients' access sites.  Instead, Relator relies upon circular logic premised upon equally unsupported assertions:  (i) if the Matalon Defendants had been monitoring their patients' access sites, they would not have allowed their patients to undergo the allegedly medically unnecessary procedures performed by Dr. Shams; and (ii) since their patients allegedly received medically unnecessary procedures performed by Dr. Shams, the Matalon Defendants must not have been monitoring their patients' access sites.  See Bank Decl., Ex. A at ¶ 125.  Not only is this logic flawed, but the baseless and conclusory allegations upon which it is premised are, without more, insufficient to satisfy Rule 9(b).

Similarly, to the extent that Relator contends that the Matalon Defendants submitted claims for services that were deemed medically unnecessary because they had already been performed by Dr. Shams, for the reasons set forth above in Section I.A.1, Relator has failed to allege particularized facts in support of his speculative assertion that the Matalon Defendants

were aware that Dr. Shams was engaging in the so-called practice of "self-referral," thereby rendering the vascular access monitoring performed by the Matalon Defendants duplicative.

Simply put, Relator has failed to identify a single patient for which any one of the Matalon Defendants actually billed for a Capitated Claim (i) without performing vascular access monitoring, or (ii) after performing vascular access monitoring that the billing Matalon Defendant knew had previously been performed by Dr. Shams.  Since Relator's allegations regarding the Matalon Defendants' knowledge of Dr. Shams' alleged "self-referral" practice amounts to nothing more than rank conjecture and speculation, Relator has failed to sufficiently plead a fraudulent scheme with respect to the Capitated Claims.

### B.     The Amended Complaint Fails to Allege Facts Sufficient to Establish the Falsity of the Alleged Claims

Relator's claims as against the Matalon Defendants also fail because Relator has not alleged facts sufficient to establish the falsity of any alleged claim by the Matalon Defendants.

"Courts in this Circuit have recognized three cognizable theories under which a claim may be false or fraudulent.  . . .  A factually false claim 'involves an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided.'"  State of New York ex. rel Khurana v. Spherion Corp., No. 15-cv-6605(JFK), 2017 WL 1437204, at *7 (S.D.N.Y. Apr. 17, 2017) (internal quotation marks and citations omitted). In addition:

> There are also two cognizable theories of "legally false" FCA liability: express false certification and implied false certification. These theories apply where, in connection with a request for payment, a defendant falsely certifies its compliance with a federal statute, regulation, or contractual provision containing a material condition for government payment . . . .  An express false certification involves a defendant's express representation of compliance when it is actually not compliant . . . .  The implied false certification theory is based on the idea that a contractor may impliedly certify compliance with material statutory, regulatory, or

17

> contractual conditions for government payment when requesting reimbursement . . . . Recently, the U.S. Supreme Court held that the implied false certification theory is viable where two conditions are met: (1) "the claim does not merely request payment, but also makes specific representations about the goods or services provided;" and (2) "the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those misrepresentations misleading half-truths.

Khurana, 2017 WL 1437204, at *7 (internal quotation marks and citations omitted).

In the present case, the Amended Complaint is devoid of facts sufficient to establish the falsity of the Shams Claims or the Capitated claims under any of these theories.

### 1.     Factual Falsity

The Amended Complaint is bereft of any allegations that the Shams Claims contained an incorrect description of goods or services provided, or a request for reimbursement for services never provided.

To the extent that the Amended Complaint alleges that the Capitated Claims relate to billing by the Matalon Defendants for vascular access monitoring that they did not perform, this bare accusation alone is insufficiently particular to allege factual falsity. Indeed, Relator has alleged no facts from which it can be inferred that the Matalon Defendants did not monitor their patients' access sites. He does not, for example, allege any statement or documentary evidence that would indicate that these services were not performed. In fact, Relator alleges nothing at all with respect to the Matalon Defendants' purported failure to provide these services, except for a bare and tenuous assertion that Dr. Shams' alleged provision of medically unnecessary services somehow reveals that the Matalon Defendants must not have monitored their patients' access sites. Critically, Relator has not identified a single patient treated by any of the Matalon Defendants for which the Matalon Defendants allegedly billed for a Capitated Claim while not monitoring the patient's access site. As such, Relator has failed to sufficiently plead a factually

false claim under Rule 9(b).  See, e.g., Pervez, 736 F. Supp. 2d at 812-813; United States ex rel. Ramos v. Icahn Sch. of Med., No. 12-cv-5089(GBD), 2015 WL 5472933, at *6 (S.D.N.Y. Sept. 16, 2015).

Moreover, the Amended Complaint does not include any basis for alleging that any reimbursement amounts that may have been paid for Capitated Claims were somehow contingent upon the Matalon Defendants performing vascular access monitoring.  The procedure codes that Relator contends the Matalon Defendants utilized for this billing contain nothing that specifically references vascular access monitoring.[8]  Furthermore, the monthly capitation payment for physician services is intended to cover a broad range of ESRD-related physician services, with no requirement that each and every possible service be provided to a patient in a given month in order to justify receipt of the capitation payment.  See 42 C.F.R. § 414.314.  Absent such a requirement, a Capitated Claim cannot be "false" merely because fewer than all covered services were performed.

As such, Relator has failed to sufficiently plead a factually false claim under Rule 9(b). See Pervez, 736 F. Supp. 2d at 812-13; Ramos, 2015 WL 5472933, at *6.

## 2.    Legal Falsity

The Amended Complaint is bereft of any allegation that the Matalon Defendants made

---

[8] According to Relator, "nephrologists utilized HCPCS code 90960 to report that they conducted 4 or more patient visits per month; they used HCPCS code 90961 to report they provided 2-3 visits per month . . . .  Generally, the payment by Medicare or Medicaid increased with an increasing number of visits per month."  See Bank Decl., Ex. A at ¶ 54.  HCPCS 90960 actually provides for ESRD-related services for patients twenty (20) years of age and older, with four face-to-face visits by a physician or other qualified health care professional per month. Similarly, HCPCS 90961 provides for ESRD-related services for patients twenty (20) years of age and older, with two-to-three face-to-face visits by a physician or other qualified health care professional per month.  See https://www.cms.gov/apps/physician-fee-schedule/search/search-results.aspx?Y=0&T=0&HT=1&CT=3&H1=90960&H2=90961&M=5.  Neither of these cited codes specifies the nature of the specific ESRD-related services that must be provided by a treating nephrologist at each visit.

any certification whatsoever – express or implied – with respect to the Shams claims.  Rather, the only connection between the Shams Claims and the Matalon Defendants were the initial referrals of patients by the Matalon Defendants to Dr. Shams for vascular access treatment – referrals that Relator does not challenge as improper.  As such, Relator has failed to identify any certification made by the Matalon Defendants – express or implied – that would render the Shams Claims legally false.

Likewise, although Relator alleges that the Capitated Claims were not medically necessary, he fails to allege any certification by the Matalon Defendants, express or implied, with respect to the medical necessity of the Capitated Claims that would render them false. Based on the foregoing, the Amended Complaint contains no allegations sufficient to establish the legal falsity of the Capitated Claims.  See, e.g., Pervez, 736 F. Supp. 2d at 813.

Notably, even if Relator had alleged that the Matalon Defendants expressly certified the medical necessity of their Capitated Claims – which Relator did not allege – then Relator's claims under the FCA would nonetheless fail because, as further detailed below, he has failed to assert any factual allegations supporting the notion that the Matalon Defendants knew that Dr. Shams had already performed vascular access monitoring services when the Matalon Defendants submitted their Capitated Claims.  To trigger FCA liability, an express certification must be knowingly false when it was made.  See, e.g., United States ex rel. Blundell v. Dialysis Clinic, Inc., No. 09-cv-00710(NAM)(DEP), 2011 WL 167246, at *13 (N.D.N.Y. Jan. 19, 2011). Relator, however, has failed to adduce sufficient particularized facts in support of his assertion that the Matalon Defendants knew that the services that they provided were medically unnecessary.  See, supra, § I.A.2.

Based on the above, the Amended Complaint fails to allege a legally false claim, express

or implied.  See, e.g., Khurana, 2017 WL 1437204, at *7-*8.

### C.     The Amended Complaint Fails to Allege Facts Sufficient to Infer Scienter

In order to state a claim under the FCA, Relator must sufficiently allege that the Matalon Defendants had knowledge of a false claim.  Pervez, 736 F. Supp. 2d at 814.   "For purposes of claims under the FCA, a person acts knowingly when he 'has actual knowledge of the information; acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the truth or falsity of the information.'"  Id.  Importantly, as explained above, although "Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.  An ample factual basis must be supplied to support the charges."  Id. at 810-811 (quoting O'Brien, 936 F.2d at 676 (internal citation omitted); see Tessler, 712 Fed. Appx. at 29; Wood, 328 Fed. Appx. at 747.  In the present case, the facts alleged in the Amended Complaint do not make out a plausible allegation that the Matalon Defendants had knowledge of a false claim under any theory – actual, deliberate indifference, or reckless disregard.

#### 1.     The Shams Claims

As detailed herein, Relator's claim that the Matalon Defendants had to know that Dr. Shams was engaged in the so-called "self-referral" practice and thereby "knew" that Dr. Shams was generating unnecessary and unreasonable claims to the Medicare and Medicaid programs is based on nothing more than conjecture and innuendo, which may not substitute for the ample factual basis necessary to infer scienter.  See, supra, § I.A.1.  Relator has not pled any particularized facts that would support his bare assertion that the Matalon Defendants had any knowledge of the foregoing acts committed by an entirely separate actor, i.e. Dr. Shams. Notably, as explained in Pervez:

[t]his failure [to allege facts sufficient to make out a plausible

> allegation of knowledge] is especially glaring in the unusual
> context of FCA claims brought against a secondary actor . . . rather
> than the provider that actually submitted the allegedly false claims.
> Section 3729(a)(1)(B) does provide a cause of action in such
> circumstances, but it seems particularly important here, where the
> allegedly culpable conduct at issue is at a somewhat greater
> remove, that the complaint describe adequately a plausible basis
> for attributing knowledge or deliberate ignorance to the party
> facing secondary liability.

Pervez, 736 F. Supp. 2d at 814-815.  As in Pervez, Relator's Amended Complaint herein lacks

any particularized factual allegation that describes adequately a plausible basis for attributing

knowledge or deliberate ignorance to the Matalon Defendants.  It is precisely this lack of

connection between knowledge of Dr. Shams' allegedly unnecessary follow-up treatments and

the Matalon Defendants that explains Relator's wholly inappropriate use of the conditional tense

("would have") to plead scienter without supporting facts.

## 2.    The Capitated Claims

To the extent that Relator contends that the Capitated Claims were medically unnecessary

because they were duplicative of the services provided by Dr. Shams, the Amended Complaint

likewise fails to set forth sufficiently particularized allegations that the Matalon Defendants

"knew" that Dr. Shams was allegedly engaged in the practice of "self-referral" and, therefore,

performing services for which the Matalon Defendants are alleged to have subsequently billed

Capitated Claims to the Medicare and Medicaid programs.  In the absence of particularized

allegations that the Matalon Defendants knew of Dr. Shams' purported misconduct, the

Amended Complaint fails to set forth any factual basis to support an inference that the Matalon

Defendants knew – whether through actual knowledge, deliberate ignorance, or reckless

disregard – that the Capitated Claims were medically unnecessary and therefore false.

Similarly, the Amended Complaint lacks any factual basis to support an inference of

scienter in connection with Relator's claim that the Matalon Defendants submitted Capitated

Claims for patients that did not receive vascular access monitoring from the Matalon Defendants. Given that Relator has failed to adequately plead a fraudulent scheme in this regard, it is plain that he has likewise failed to plead any basis for this Court to attribute scienter to the Matalon Defendants based on that scheme.

Simply put, Relator has failed to plead facts sufficient to infer scienter by the Matalon Defendants and, as such, the Amended Complaint must be dismissed as against the Matalon Defendants.  See, e.g., Tessler, 712 Fed. Appx. At 30.

**D.   The Amended Complaint Fails to Sufficiently Plead the Submission of a False Claim by the Matalon Defendants**

As articulated by the Second Circuit in Chorches, Rule 9(b) does not require that every qui tam complaint provide details of actual bills or invoices submitted to the government, so long as the relator makes "plausible allegations . . . that lead to a strong inference that specific claims were indeed submitted and that information about the details of the claims submitted are peculiarly within the opposing party's knowledge."  Chorches, 865 F.3d at 93 (emphasis added).

In Chorches, the Second Circuit considered a complaint alleging:

> the specifics of a scheme whereby [defendant] falsified [Patient Care Reports] so as to certify the runs as "medically necessary" and thus render them reimbursable by the government.  It names supervisory personnel at [defendant's] offices in New Haven who instructed paramedics and EMTs to revise [Patient Care Reports] to insert false information.  It identifies not only the time period of [plaintiff's] employment, August 2010 to December 2011, as that during which the fraudulent scheme took place, but also provides dates, both precise and approximate, with respect to many particular runs for which [plaintiff] was later asked to falsify a [Patient Care Report].  It explains both the scheme itself and the method by which [defendant] executed the scheme: how Medicare reimbursed [defendant] only for ambulance transports that qualified as medically necessary; how the EMTs and paramedics were required to complete [Patient Care Reports] to document their runs; and how [defendant's] supervisors provided hard-copy markups (that were later destroyed) to the EMTs and paramedics and ordered them, under threat of suspension or termination, to

23

> revise field-generated [Patient Claim Reports] with false or
> misleading information such that runs could be certified as
> medically necessary.
>
> In addition to alleging that [defendant] falsified [Patient Claim
> Reports] on a daily basis, and identifying the types of patients
> whose [Patient Claim Reports] were routinely falsified, the [Third
> Amended Complaint] details many specific runs – providing
> information such as the date, patient name, and original reason for
> the transport – for which [plaintiff] was told to alter a [Patient
> Claim Report] with false or misleading information.   These
> allegations are not merely general or conclusory.

Chorches, 865 F.3d at 83-84.  The Second Circuit then concluded that the complaint "makes

plausible and particularized factual allegations leading to a strong inference that [defendant] did

in fact submit false claims to the government" based on the relator's allegations of the "scheme."

See Chorches, 865 F.3d at 85.  Specifically, the Second Circuit pointed to the "specific instances

in which [defendant's] supervisors expressly asked for a [Patient Care Report] to be falsified in

order to qualify for Medicare reimbursement," noting that it was "difficult to conceive of a

reason why [defendant] would go to the trouble of qualifying runs as medically necessary if not

to claim reimbursement for them."  Id.

Here, unlike in Chorches, the Amended Complaint fails to set forth allegations that lead

to an inference that specific claims were submitted, let alone a strong inference as it must.  As

discussed above, Relator has failed to sufficiently allege a fraudulent scheme that would support

a strong inference that false claims were actually submitted to the government.  See, supra, § I.A.

Specifically, the absence of allegations detailing specific and plausible facts that the Matalon

Defendants:  (i) had knowledge that Dr. Shams engaged in the so-called practice of "self-

referral" and thereby somehow caused his submission of false claims; (ii) provided monitoring

services that were duplicative of Dr. Shams' monitoring services and therefore medically

unnecessary; and/or (iii) failed to provide monitoring services, renders implausible any allegation

that false claims were actually submitted to the government.  Nor does the Amended Complaint allege any details whatsoever concerning the actual or likely submission of specific claims to government healthcare programs that might have arisen from a fraudulent scheme, had such a scheme been adequately pleaded (which it was not).  Where, as here, neither the alleged fraudulent scheme nor the actual submission of specific claims is pled with the particularity required under Rule 9(b), there is no basis for a court to conclude that specific false claims were submitted to the government in violation of the FCA and, thus, all claims against the Matalon Defendants must be dismissed.  See Aryai, 2019 WL 1258938, at *9.

## CONCLUSION

For the reasons set forth herein, the Matalon Defendants respectfully request that this Court issue an Order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing Relator's Amended Complaint as asserted against the Matalon Defendants in its entirety, with prejudice, along with such other and further relief as this Court may deem just and proper.

Dated:  Uniondale, New York
      October 24, 2019

                        Respectfully submitted,
                        RIVKIN RADLER LLP

                        By: /s/ Brian L. Bank
                                Geoffrey Kaiser, Esq. (GK 6991)
                                Brian L. Bank, Esq. (BB 5995)
                                Michelle A. Bholan, Esq. (MB 7505)
                        926 RXR Plaza
                        Uniondale, New York 11556-0926
                        Telephone:    (516) 357-3000
                        Facsimile:    (516) 357-3333

                        *Counsel for Defendants Robert Matalon, M.D., Daniel Matalon, M.D., and Albert Matalon, M.D.*

4591060

25