UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA ex rel., and
MICHAEL I.  LEVINE, M.D.,                    Docket No.: 12-cv-05103-LGS

                              Plaintiff-Relator,

        v.

ROBERT MATALON, MD, JOSEPH SHAMS, MD,
DANIEL MATALON, MD, ALBERT MATALON, M.D,
VASCULAR ACCESS CENTERS (and each of its
subsidiary and/or related Corporations),
JAMES McGUCKIN, MD (and any and all clinics owned,
run, managed or operated by him),
PHILADELPHIA VASCULAR INSTITUTE,

                              Defendants.
-----------------------------------------------------------------X

**DEFENDANT DR. JOSEPH SHAMS, M.D.'S REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT OF HIS MOTION TO DISMISS
THE AMENDED COMPLAINT**

COHEN TAUBER SPIEVACK & WAGNER P.C.
420 Lexington Avenue, Suite 2400
New York, New York 10170
Tel.: (212) 586-5800

*Counsel for Defendant Dr. Joseph Shams, MD*

{00405309.DOCX; 3}

## **TABLE OF CONTENTS**

Table of Authorities................................................................................................i

PRELIMINARY STATEMENT .............................................................................1

ARGUMENT............................................................................................................2

   I.    THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE LEVINE IS NOT AN "ORIGINAL SOURCE"..................................................................2

   II.   THE AMENDED COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) ......................................................................................................5

      A.   The Amended Complaint Should Be Dismissed for Failure to Plead Particularized Facts Showing a Violation of the FCA.........................................................5

      B.   The Allegations in the Amended Complaint are Time-Barred........................8

   III.  THE COURT SHOULD CONSIDER THE EXHIBITS ATTACHED TO THE MOTION TO DISMISS AND NOT CONVERT THIS MOTION INTO ONE FOR SUMMARY JUDGMENT ..................................................................................9

CONCLUSION ......................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*U.S. ex rel. Aryai v. Skanska*,
  09 CIV. 5456 (LGS), 2019 WL 1258938 (S.D.N.Y. Mar. 19, 2019)....................................3, 4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................................7

*U.S. ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*,
  865 F.3d 71 (2d Cir. 2017) ...............................................................................................*passim*

*Hayes v. Dept. of Educ. of City of New York*,
  20 F. Supp. 3d 438 (S.D.N.Y. 2014) ......................................................................................8, 9

*Krasner v. Episcopal Diocese of Long Island*,
  374 F. Supp. 2d 306 (E.D.N.Y. 2005) ......................................................................................10

*U.S. ex rel. Piacentile v. Amgen, Inc.*,
  336 F. Supp. 3d 119 (E.D.N.Y. 2018) .........................................................................................7

*U.S. ex rel. Smith v. Yale Univ.*,
  415 F. Supp. 2d 58 (D. Conn. 2006).............................................................................................6

*U.S. ex rel. Tessler v. City of New York*,
  712 Fed. Appx. 27 (2d Cir. 2017)..................................................................................................7

*Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*,
  966 F. Supp. 2d 282 (S.D.N.Y. 2013) ..........................................................................................4

*In re UBS AG Sec. Litig.*,
  No. 07 CIV. 11225 RJS, 2012 WL 4471265.............................................................................2, 8

**Statutes**

31 U.S.C. § 3730(e)(4) ......................................................................................................................2, 3

New York False Claims Act...................................................................................................................1

**Other Authorities**

Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6) ..........................................................1

Rule 9(b)...................................................................................................................................................5

Rule 12(b)(1) .......................................................................................................................................1, 3

Rule 12(B)(6)................................................................................................................5

Rule 15(c)(1)(B) ............................................................................................................8

Shams[1], by his counsel, respectfully submits this reply memorandum of law in further support of his motion to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[2]

## PRELIMINARY STATEMENT

As demonstrated in the moving brief, the Amended Complaint is long on *innuendo* and short on specific facts demonstrating that *Shams*—not Beth Israel, McGuckin, or American Access Care—engaged in improper self-referrals for the purpose of submitting false Medicare claims. Levine's allegations are pure speculation and conjecture based on a single direct communication with Shams in 2009, concerning a patient (not alleged to be a patient of Shams) who was referred for an allegedly unnecessary follow-up appointment (though not by Shams), that the patient never attended and for which there was never any claim submitted to Medicare.

Levine's opposition does nothing to alter the conclusion that his threadbare allegations of fraudulent conduct are ripe for dismissal. *First*, his contention that he is an "original source" not only relies upon an incorrect version of the relevant statute, but also fails to address that he used second-hand information about other *qui tam* actions as the basis for *why* he believes Shams committed an FCA violation. Consequently, this Court lacks subject matter jurisdiction and the matter must be dismissed pursuant to Rule 12(b)(1).

*Second*, Levine's contention that he adequately pled viable FCA claims hinges on his hope that the *Chorches* case, which slightly altered the pleading requirements for FCA claims, permits

---

[1] Defined terms used herein have the same meaning as in the moving brief.

[2] On October 30, 2019, Levine filed a corrected version of his Amended Complaint, which removed references to the State of New York and the New York False Claims Act (ECF Dkt. No. 186). (Supplemental Declaration of Stephen Wagner, dated December 18, 2019, Ex. A.) Because the corrected version of the pleading did not alter the substantive allegations, or paragraph sequencing, of the prior iteration of the pleading, the Court should apply Shams' motion to dismiss against the operative, corrected pleading (ECF Dkt. No. 186), rather than the Amended Complaint.

him to proceed on ill-pled claims.  His reliance *Chorches* is entirely misplaced because he has not adduced specific facts supporting a strong inference of fraud, which is a necessary prerequisite to *Chorches*' modified pleading standard.

*Third*, the claims are untimely.  Levine cannot rely on the submissions to Medicare in 2012-2017 to pull his claims within the statute of limitations, as there is no nexus alleged between any such claims and any purportedly fraudulent conduct that occurred in *2009*.  Moreover, contrary to Levine's position in opposition, he cannot rely on the relation-back doctrine, which is unavailable to relators in FCA *qui tam* actions.

For these reasons, as set forth more fully below and in the moving brief, Shams' motion should be granted, and the Amended Complaint dismissed with prejudice.

## ARGUMENT

### I.   THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE LEVINE IS NOT AN "ORIGINAL SOURCE"

Levine is not an original source because (i) he fails to allege any personal knowledge of Shams' medical or billing practices (aside from a single phone call) and (ii) second-hand allegations about American Access Care and McGuckin form the crux of the fraud allegations in the Amended Complaint.  Because the *only* conceivably fraudulent conduct allegedly occurred in 2009, the pre-2010 version of 31 U.S.C. § 3730(e)(4) applies as a jurisdictional bar to this action.

In opposition, Levine fails to address (and indeed concedes *sub silentio*) that, if the pre-2010 version of the FCA applies, the jurisdictional bar applies to this case and the action must be dismissed.  (*See* Opp. Br. at 20-21.)  *See, e.g.*, *In re UBS AG Sec. Litig.*, No. 07 CIV. 11225 RJS, 2012 WL 4471265, at *21 n.19, *23 n.22 (S.D.N.Y. Sept. 28, 2012) *aff'd sub nom. City of Pontiac*

2

*Policemen's & Firemen's Ret. Sys. V. UBS AG*, 752 F.3d 173 (2d Cir. 2014) (arguments not addressed in an opposition brief are deemed waived).[3]

Instead, Levine contends that the 2010 amendment to 31 U.S.C. § 3730(e)(4) applies and that, pursuant to such amendment, it is Shams' burden to prove that Levine did not rely on public disclosures.  Levine is incorrect.  *First*, Levine applies the wrong version of the statute; Levine bears the burden of establishing that he is an original source under the pre-2010 version.  Levine cannot rely on Shams' alleged submission of Medicare claims between 2012 to 2017 to pull his claim within the ambit of the post-2010 version of the statute.  As discussed below, there is no nexus between any alleged fraudulent conduct and the later Medicare claims submitted by Shams or Beth Israel.  They were allegedly submitted *years* later and have no bearing or relationship to patient RG, the only patient for whom *Shams* (rather than unnamed physicians at Beth Israel) allegedly scheduled a follow-up appointment (which RG never attended).  By Levine's logic, so long as a physician is currently submitting claims to Medicare, the pre-2010 version of the statute could *never* apply, which is false.  *See U.S. ex rel. Aryai v. Skanska*, 09 CIV. 5456 (LGS), 2019 WL 1258938, at *3–4 (S.D.N.Y. Mar. 19, 2019).

*Second*, even if the current version of the statute applied, Levine concedes (Opp. Br. at 21) that neither this District nor the Second Circuit has held that the *defendant* has the burden of establishing that the relator relied on public information.  As such, Levine's burden-shifting argument is entirely without support.

---

[3] Levine states that the pre-2010 version is "irrelevant to this case," but does not actually challenge Shams' argument that, if the pre-2010 version applies, his claims must be dismissed pursuant to Rule 12(b)(1).

3

*Third*, even if Shams bears the burden, the allegations make plain that Levine did not rely on his own personal knowledge in asserting claims against Shams.[4]  The Amended Complaint *explicitly* cites McGuckin and American Access Care as the basis for why Levine suspected that Shams violated the FCA, and not any specific action by *Shams*. *Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 300 (S.D.N.Y. 2013) ("Direct knowledge contemplates knowledge obtained from actually viewing source documents, or first-hand observation of the fraudulent activity that provides the grounds for the *qui tam* suit.") (quotations omitted).

Levine contends that the Amended Complaint's allegations are based on his own personal experiences and observations, yet with the exception of a single telephone-call (¶¶ 87-88),[5] Levine is tellingly unable to cite any personal interaction he had with Shams (*see* ¶¶ 10, 14, 78-80, 82, 90, 94, 95, 110).  And his attempts to detail his own personal conversations or experiences do not advance his cause as they merely demonstrate that his suspicion of wrongdoing by Shams was entirely colored by his knowledge of American Access Care.  (*See* ¶¶ 89, 90-91)

Similarly, that Levine's approximation for the number of purportedly unnecessary angioplasties was plucked from expert testimony in a different, publicly filed case, does nothing to show that Levine had any independent knowledge of purportedly wrongful conduct by Shams.[6] (Opp. Br. at 25).  Consequently, Shams has met any necessary burden to demonstrate that Levine is not an original source.  (*See* Moving Br. at 12-14.)

---

[4] Levine is unable to cite a single case supporting his argument that Shams failed to carry his purported burden.  (*See* Opp. Br. at 23-26)

[5] Levine's single telephone call with Shams concerning one patient who never attended a purportedly unnecessary follow-up appointment cannot be the basis for Levine to be an original source.  *See, e.g.*, *Aryai*, 2019 WL 1258938, at *5-6.

[6] Shams' moving brief, at page 13, inadvertently cited ¶ "128 & n.3"; the correct reference should have been to footnote 5 in the Amended Complaint.

## II.   THE AMENDED COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6)

### A.   The Amended Complaint Should Be Dismissed for Failure to Plead Particularized Facts Showing a Violation of the FCA

Shams' moving brief thoroughly detailed how the Amended Complaint fails to allege viable FCA claims pursuant to Rule 9(b), as Levine fails to (i) plead fraudulent conduct with particularity; (ii) particularly allege the submission of any false claim relating to such allegedly fraudulent conduct; and (iii) set forth allegations demonstrating a strong inference of fraudulent intent.  (Moving Br. at 15-22.)  In response, Levine merely repeats or summarizes his (insufficient) factual allegations without actually demonstrating that they meet the particularity requirements under Rule 9(b).  Aside from cases merely reciting boilerplate standards for *qui tam* actions, Levine's opposition is bereft of any case law or authority supporting his position.[7]

Levine's opposition is most notable for the points he concedes.  Among other things, Levine does not contest (and therefore concedes) the following issues raised by Shams' moving brief: (i) there are no allegations concerning any false claim relating to RG, JO, or MH (let alone any allegations concerning the dates on which any could have been submitted); (ii) the Amended Complaint is devoid of factual allegations identifying when or where any patient actually attended a medically unnecessary follow-up appointment; (iii) there is no factual allegation concerning the *specific* date on which Levine spoke to Shams about RG; (iv) Shams is not alleged to have personally scheduled RG's follow-up visit to Beth Israel;[8] (v) Levine only had one conversation with Shams; (vi) the Amended Complaint does not explain how or why

---

[7] With the exception of *Chorches*, Levine's opposition does not address the litany of cases cited by Shams which dismissed similar FCA claims predicated on paltry factual allegations.  (*See* Moving Br. at 15-22.)

[8] The opposition notes that "Shams' self-scheduled vascular access procedures were medically unnecessary" (Opp. Br. at 14), but this ignores that there is no allegation whatsoever that *Shams* ever made any purportedly improper self-referrals.

"everyone did it" was fraudulent; and (vii) the Amended Complaint does not allege that Shams

had any particular motive to commit fraud (there is no claim that his compensation from Beth

Israel was in any way tied to Medicare reimbursements).[9]

Levine's reliance on *Chorches* is entirely misplaced. *Chorches* merely stands for the

proposition that a relator may make a marginally lesser showing that actual claims were

submitted to the government when (i) the claims are uniquely in the hands of the defendant and

(ii) there are sufficient "specific factual allegations" making it "highly plausible" that the

defendant submitted false claims.  (Moving Br. at 19)  Levine relies so heavily on *Chorches*

because he realizes that the Amended Complaint is short on specific facts and hopes that

*Chorches*' ostensibly lessened pleading requirement will get the Amended Complaint over the

hump (it does not).[10]

Levine's factual allegations do not remotely rise to level of "highly plausible," as the

pleading is bereft of specific facts supporting a strong inference of fraud: the entire theory of

Levine's case is predicated on a single telephone call concerning a patient whom Shams did not

schedule for a follow-up appointment, in which Shams ambiguously said "everyone did it," and

where the patient never actually attended any follow-up appointment.  It would be patently

absurd to extrapolate an elaborate, decades-long fraudulent scheme—as Levine purports to do

here—from Levine's single alleged interaction with Shams in 2009.  Such threadbare allegations

do not pass muster under *Chorches*, which cautioned that the "standard must not be mistaken for

---

[9] Levine does not dispute that Shams' claimed rise in Medicare billing rankings were attributable to a change in the setting in which the procedures were performed.  Nor does Levine challenge that a major limitation of CMS data is that it may capture procedures performed by another physician (and not merely the physician under whose name the bill was submitted to Medicare).

[10] While scienter may be pled generally, Levine's own cited authority notes that it does not obviate the requirement that an FCA plaintiff "still must allege facts that give rise to a strong inference of fraudulent intent."  *U.S. ex rel. Smith v. Yale Univ.*, 415 F. Supp. 2d 58, 83 (D. Conn. 2006) (cited in the opposition brief at page 16).

6

license to base claims of fraud on speculation and conclusory allegations.  A relator must make allegations that lead to a strong inference that specific claims were indeed submitted and also plead that the particulars of those claims were peculiarly within the opposing party's knowledge." *U.S. ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 86 (2d Cir. 2017); *U.S. ex rel. Tessler v. City of New York*, 712 Fed. Appx. 27, 30 (2d Cir. 2017).

Levine's contention that "[e]ven if it was not Shams himself who individually self-scheduled JO for routine follow-ups, the case of JO reinforces that this was Beth Israel's corporate practice and policy" (Opp. Br. at 15) gives up the whole game, as it reveals that the allegations here pertain, at best, to *Beth Israel*'s practices regarding scheduling for unnecessary follow-up visits and procedures, rather than any specific practice by *Shams*.[11]

Moreover, Levine's reliance on *legal* conclusions regarding "the way in which the system is supposed to operate" (Opp. Br. at 13-14) are not entitled to the presumption of truth.  *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  Levine does not contest that his allegations whether certain Medicare codes are or are not intended for follow-up visits constitute legal conclusions and/or opinions.  (*See* Moving Br. at 10 n.17)

Levine's statement that the submission of a Medicare claim meets the elements of making claims to the United States is irrelevant because he has not alleged that Shams made any claims to the United States relating to RG, JO, MH, or any other patient.[12]  (Opp. Br. at 9 (citing *U.S. ex rel. Mikes v. Straus*, 274 F.3d 687 (2d Cir. 2001).) *See U.S. ex rel. Piacentile v. Amgen, Inc.*, 336 F. Supp. 3d 119, 132 (E.D.N.Y. 2018) (dismissing FCA claim where the relator failed

---

[11] Beth Israel is a former party to this action against whom Levine voluntarily (and inexplicably) dismissed his claims.

[12] There are likewise no allegations that anyone at Beth Israel submitted false claims relating to these patients.

to allege the dates on which claims were submitted or even an approximate range of dates).  For the Medicare claims generally referenced in the Amended Complaint, Levine fails to connect them with any purportedly fraudulent conduct (except for some attenuated connection between a single phone call in 2009 and the submission of a claim in 2017).[13]

The Amended Complaint should be dismissed because it fails to allege FCA claims with the requisite specificity.[14]

## B.  The Allegations in the Amended Complaint are Time-Barred

Levine's claims should be dismissed as untimely because the Amended Complaint asserts entirely distinct claims against Shams—concerning purportedly fraudulent conduct occurring in 2009—that were not alleged in the initial pleading filed in 2012.  Levine has not been able to demonstrate that his claims are timely.

*First*, as set forth above, there is no nexus between any alleged Medicare claim filed between 2012 and 2017 and any allegedly fraudulent conduct by Shams (which, if at all, occurred in 2009).  As such, *2009* is the relevant date for statute of limitations purposes, rather than the date on which any Medicare claim was allegedly filed.[15]  (*Contra* Opp. Br. at 3)

*Second*, Levine's argument that the relation-back doctrine can save his untimely claims is flat wrong.  As the court in *Hayes v. Dept. of Educ. of City of New York*, 20 F. Supp. 3d 438, 449

---

[13] For this reason, the fact that Medicare submission forms *can* be considered false statements is irrelevant (*see* Opp. Br. at 19-20 and cases cited therein) because no Medicare submissions referenced in the Amended Complaint have any connection to RG, JO, or MH (and were submitted *years* after the allegations concerning those patients).

[14] To the extent the NYFCA claims remain a part of this action, Levine fails to counter the argument that the NYFCA claims should be dismissed and therefore he has conceded that argument.  *In re UBS AG Sec. Litig.*, *supra*.

[15] That the filing of Levine's initial pleading may have tolled the statute of limitations as to McGuckin, Vascular Access Centers, or other parties, against whom Levine detailed specific factual allegations in the initial pleading, is irrelevant.  (*Contra* Opp. Br. at 4-5.)  (For this reason, the cases by Levine at page 4, footnote 4, of his brief are inapposite.)  The incredibly sparse allegations pertaining to Shams amount to nothing more than "naked assertions" which could not survive a motion to dismiss, and certainly should not be the basis on which Levine should be permitted to resurrect stale claims seven years after the initial pleading was filed.

8

(S.D.N.Y. 2014) makes crystal clear: "the Second Circuit said unambiguously in that case [*Baylor*] that Rule 15(c)(1)(B) relation back is simply unavailable in suits brought pursuant to § 3730(b)'s procedural requirements." Moreover, *Hayes* completely undercuts Levine's argument that *Baylor* is limited solely to relation-back claims by the government (Opp. Br. at 5-6), as *Hayes* concerned whether a relator could take advantage of relation-back to her own pleading to save untimely claims.

*Third*, even if relation-back were available to Levine, he cannot take advantage of it. As detailed in the moving brief, Shams barely features in the initial pleading at all – at most, it is alleged that *Beth Israel* engaged in "the same over-utilization scams" as McGuckin (which included a number of fraudulent acts different from those at issue here). The Amended Complaint does not simply "flesh out" the claims with more particularity (Opp. Br. at 6)[16]; it invents entirely new factual allegations that are not alleged in the initial pleading. Indeed, Levine's opposition tellingly declines to make any specific comparison between the sparse allegations in the initial pleading against the far more detailed factual allegations set forth in the Amended Complaint.[17] Accordingly, even if relation back were available to him, Levine's claims against Shams do not relate back to the initial pleading for statute of limitation purposes.

### III.   THE COURT SHOULD CONSIDER THE EXHIBITS ATTACHED TO THE MOTION TO DISMISS AND NOT CONVERT THIS MOTION INTO ONE FOR SUMMARY JUDGMENT

Levine contends that the Court cannot consider Exhibits 4 through 8 of the Wagner Decl. because they are outside the pleadings. (Opp. Br. at 26-29.) In particular, he contends that the

---

[16] Levine cannot cite a single case to support this contention.

[17] Levine's contention that any claim "predating August 5, 2019 by up to six years[] would still be timely" (Opp. Br. at 6 n.5) is irrelevant because he has not alleged any timely claim in the six years predating August 5, 2019: the only fraudulent conduct allegedly occurred in 2009.

CMS data was presented in the Wall Street Journal and is not itself data from CMS.[18]  This

ignores that the Wall Street Journal merely reproduced data from CMS (albeit in a more

accessible and presentable fashion than CMS).  Levine does not (because he cannot) contend that

the Wall Street Journal's CMS data is in any way inaccurate; indeed, he concedes it is "reliable

evidence."  (Opp. Br. at 28.)  Consequently, the Court can take judicial notice of these

documents.[19]

       Should the Court determine that it cannot take judicial notice of material submitted by

Shams on the motion, it should not convert the motion to dismiss into a motion for summary

judgment.  Instead, the Court may decline to consider the extraneous material, as there is more

than a sufficient basis—even without the exhibits submitted—on which this Court may grant

Shams' motion to dismiss.  *See, e.g.*, *Krasner v. Episcopal Diocese of Long Island*, 374 F. Supp.

2d 306, 309 (E.D.N.Y. 2005) ("Although both parties have submitted numerous

exhibits outside of the pleadings in support of their arguments, the Court declines to consider

those materials and declines to convert the instant motion to one for summary judgment.").

---

[18] Notably, Levine does not contest Shams' argument that the Amended Complaint relied on this data, as presented in the Wall Street Journal, in preparing the pleading, which is an independent basis on which this Court can take judicial notice of the material.

[19] The Court can consider Exhibit 8 to the Wagner Decl. because it is a record and/or report of CMS, a federal administrative body (and Levine does not argue otherwise).  Levine's claim that it is irrelevant (Opp. Br. at 28 n.6) has nothing to do with whether it can be considered by the Court on this motion.

{00405309.DOCX; 3}

**CONCLUSION**[20]

Based on the foregoing, the action should be dismissed with prejudice.

Dated: New York, New York
       December 18, 2019

<div style="margin-left: 40%;">

COHEN TAUBER SPIEVACK & WAGNER P.C.
*Counsel for Defendant Joseph Shams, M.D.*


By:  /s/ Stephen Wagner
    Stephen Wagner
    Jackson S. Davis
    420 Lexington Avenue, Suite 2400
    New York, New York 10170
    Tel.: (212) 586-5800
    swagner@ctswlaw.com
    jdavis@ctswlaw.com

</div>

---

[20] In the unlikely event that this Court finds that Levine has sufficiently pleaded his FCA claims, discovery in this matter should be limited in scope to the years 2009-2011, the time frame in which RG, JO, and MH were allegedly scheduled for follow-up appointments (for which they never attended). Alternatively, discovery should be restricted to the years for which Shams worked for Beth Israel, as Levine's opposition contends that it was Beth Israel's policies that drove any purportedly improper self-referrals.

11

{00405309.DOCX; 3}